UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED W. ARELLANO, II, Plaintiff, v. MICHAEL J. ASTRUE, Commissioner of Social Security, Defendant. | Case No. EDCV 08-1537 JC MEMORANDUM OPINION |

## I.   SUMMARY

On November 12, 2008, plaintiff Alfred W. Arellano, II ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of his application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; November 14, 2008 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On June 29, 2006, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 58-61). Plaintiff asserted that he became disabled on September 1, 2001, due to schizophrenia. (AR 101). The ALJ examined the medical record and held a hearing, which plaintiff did not attend, on June 6, 2007. (AR 5-7). The ALJ "decide[d] the matter on the record." (AR 7).

On July 18, 2008, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 13-21). Specifically, the ALJ found: (1) plaintiff suffered from "severe impairments in the musculoskeletal system from status post surgical repair of cervical spine fracture and a long history of polysubstance abuse and consequent mood disorder" (AR 15); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 15-16); (3) plaintiff retained the residual functional capacity to perform light work with certain restrictions (AR 16);[2] (4) plaintiff has no past relevant work (AR 19); (5) plaintiff can perform jobs that exist in significant numbers in the national economy (AR 20); and (6) plaintiff's allegations regarding his limitations were not entirely credible. (AR 18).

The Appeals Council denied plaintiff's application for review. (AR 1-3).

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2] The ALJ determined that plaintiff could perform light work "except the claimant is limited to occasional postural activities. Mentally, the claimant is able to perform simple, routine, repetitive, nonpublic tasks." (AR 16).

III. APPLICABLE LEGAL STANDARDS

    A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in

significant numbers in the national economy? If so, the
claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

### B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. Medical Evidence

Plaintiff contends that the ALJ erred by failing to consider properly the opinions of a non-examining state agency physician, Dr. Karen Loomis, and a licensed clinical social worker, Karen Banker. (Plaintiff's Motion at 2-4). Plaintiff's arguments lack merit.

///

### 1. Dr. Loomis

Dr. Loomis completed a "Mental Residual Functional Capacity Assessment" form and a "Psychiatric Review Technique" form on August 22, 2006, and reviewed a case analysis form on the same date. (AR 158-73). Dr. Loomis's opinion represented her "summary conclusions derived from the evidence in the file." (AR 158). On the "Mental Residual Functional Capacity" form Dr. Loomis opined, among other things, that plaintiff had at most moderate limitations in some functions associated with understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (AR 158-59). She concluded that plaintiff's mental residual functional capacity was compatible with "remembering short and simple instructions," performing "simple repetitive task[s] for a full workday and full workweek," interacting "with peers and supervisors, but not with the public[,]" and adapting to "the usual work setting." (AR 160). On the "Psychiatric Review Technique" form, Dr. Loomis indicated that plaintiff did not have a schizophrenic, paranoid, or other psychotic disorder that "precisely satisf[ied] the diagnostic criteria" specified on the form, but that he had "[s]chizophrenia by history." (AR 163). She again noted that plaintiff had moderate limitations in maintaining social functioning and maintaining concentration, persistence, or pace. (AR 169). On the case analysis form, Dr. Loomis stated that there was "[s]ufficient [e]vidence to make [a] decision," and concluded that plaintiff "is capable of understanding, remembering and carrying out simple repetitive tasks. [He] is able to maintain concentration, persistence and pace throughout a normal workday/workweek as related to simple tasks. [He] is able to interact adequately with coworkers [and] supervisors but may have difficulty dealing with the demands of general public contact. [He] is able to make adjustments and avoid hazards in the workspace." (AR 173).

Plaintiff's contention that the ALJ "rejected the State Agency findings without providing legally sufficient reasons" lacks merit. (Plaintiff's Motion at 3).

Although the ALJ did not adopt Dr. Loomis's diagnosis of schizophrenia by history, there is no evidence that the ALJ rejected her opinion. The ALJ specifically cited the forms she completed: "I have also read and considered the findings and opinions of the State Agency review examiners and medical consultants at Exhibits 2F, 3F, and 4F [AR 158-73 – Dr. Loomis's opinions]." (AR 19, 158-73). Moreover, the ALJ stated he gave "some significant weight to [the State Agency review examiners' and medical consultants'] assertions as they are not inconsistent with the overall medical evidence." (AR 19). The ALJ accurately summarized Dr. Loomis's opinion as

> indicating that [plaintiff's] understanding and memory were compatible with remembering short and simple instructions and concentration and attention were adequate for simple repetitive task[s] for a full workday and full workweek. [Plaintiff's] social interaction capacity was adequate for dealing with peers and supervisors, but not with the public, and his adaptation capacity was intact for the usual work setting.

(AR 19). As the ALJ mentioned, he accounted for these findings in his residual functional capacity assessment, which limited plaintiff to "perform[ing] simple, routine, repetitive, nonpublic tasks." (AR 16, 19). Thus, the Court cannot conclude that the ALJ rejected Dr. Loomis's opinion. The ALJ's failure to adopt her diagnosis of schizophrenia by history was, at most, harmless error, as Dr. Loomis herself believed plaintiff was not disabled (AR 160, 173). See Stout, 454 F.3d at 1044 (harmless error if "inconsequential to the ultimate disability determination"). A remand or reversal on this basis is not warranted.

### 2. Ms. Banker

Ms. Banker, a licensed clinical social worker, diagnosed plaintiff with recurrent severe major depression with psychotic features, generalized anxiety,

6

and alcohol and drug abuse; and she assigned him a Global Assessment of Functioning ("GAF") score of 43.[3] (AR 128). It is not clear whether Ms. Banker actually examined plaintiff, as she signed her name on December 22, 2004, under the heading "Person Authorized To Diagnose (if clinician is not so authorized)," to a form signed by a clinician on November 4, 2004. (AR 128). There is no indication in the record that Ms. Banker examined plaintiff on any other occasion.

The Court rejects plaintiff's argument that the ALJ "rejected Ms. [Banker's] findings without providing legally sufficient reasons." (Plaintiff's Motion at 4). To establish that he has a medical impairment such as those diagnosed by Ms. Banker (recurrent severe major depression with psychotic features and generalized anxiety), it was incumbent upon plaintiff to submit evidence from an "acceptable medical source[]." See 20 C.F.R. § 416.913(a). A licensed clinical social worker such as Ms. Banker is not an "acceptable medical source." Id. Moreover, an ALJ must provide an explanation only when he rejects "significant probative evidence." See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Plaintiff has not demonstrated that Ms. Banker's findings constitute significant or probative evidence. The form completed by Ms. Banker comprises little more than a list of diagnoses and does not discuss any objective medical evidence. (See AR 128). An ALJ need not accept a medical opinion "that is conclusory and brief and unsupported by clinical findings." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Ms. Banker's assessment of a GAF score does not transform her opinion into significant probative evidence. GAF

---

[3] A GAF score is a clinician's judgment of an individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 2000). A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32.

scores, standing alone, are not determinative of mental disability for purposes of social security claims.  See McFarland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (ALJ's failure to address GAF scores specifically did not constitute legal error).[4]  In any event, the ALJ's residual functional capacity assessment accounts for plaintiff's mental impairments, is not inconsistent with the GAF score assessed by Ms. Banker, and is supported by substantial evidence.  To the extent the ALJ erred by failing to discuss Ms. Banker's opinion, any such error was harmless.  Accordingly, a remand or reversal on this basis is not warranted.

### B. Plaintiff's Credibility

Plaintiff next argues that the ALJ rejected his testimony "without providing legally sufficient reasons." (Plaintiff's Motion at 6-7).  The Court disagrees.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Lingenfelter, 504 F.3d at 1036 (citations omitted).  "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).  "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." Orn v. Astrue, 495 F.3d 625, 635

---

[4] The court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007.  See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

(9th Cir. 2007) (citation and quotation marks omitted).  In weighing credibility, the ALJ may consider factors including:  the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation."  Bunnell, 947 F.2d at 346 (citing Social Security Ruling ("SSR") 88-13[5]; quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If properly supported, the ALJ's credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

In this case, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [plaintiff's] statements . . . concerning the intensity, persistence and limiting effects of these statements are not credible to the extent they are inconsistent with the residual functional capacity assessment."  (AR 18).  The ALJ provided several reasons for discounting plaintiff's credibility.  First, he noted that plaintiff "is not compliant with treatment as he runs out of medication and he was very inconsistent in keeping his mental health appointments," suggesting "that his symptoms may not be as severe as he purports."  (AR 17) (citing Exhibits 2F, 7F, 11F, 12F [AR 158-69, 182-92, 207-20]).  The record is indeed replete with

---

[5]Social Security rulings are binding on the Administration.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).  Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.  Massachi v. Astrue, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007) (citing SSR 00-4p).

indications that plaintiff has not been compliant with his medications and has frequently missed appointments. (AR 144, 149, 150, 154, 156, 157, 177, 178, 190, 192, 211). The ALJ properly considered plaintiff's failure consistently to "seek treatment or to follow a prescribed course of treatment" in assessing his credibility. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

Next, the ALJ found that plaintiff's criminal history detracted from his credibility. The ALJ noted that plaintiff had been "incarcerated with a history of multiple arrests as a juvenile and as an adult for felony burglary"; that plaintiff "is a self-admitted gang member"; and that plaintiff had been "charged with lying and making false statements to police officers." (AR 17) (citing Exhibits 5F at 6 [AR 179], 10F [AR 203-06])). The ALJ properly considered plaintiff's criminal history in assessing his credibility. See Steward v. Astrue, 2009 WL 3757401, at *7 (C.D. Cal. Nov. 3, 2009) ("By utilizing ordinary techniques of credibility evaluation, the ALJ rejected Plaintiff's credibility partially based on her past criminal history.") (citing Thomas, 278 F.3d at 958-59; Smolen, 80 F.3d at 1284).

The Court does not specifically address the ALJ's other reason for discounting plaintiff's credibility, but it has determined that it does not detract from the ALJ's ultimate credibility determination. See Carmickle v. Commissioner of the Social Security Administration, 533 F.3d 1155, 1162 (9th Cir. 2008). A reversal or remand is not warranted on this basis.

### C. Side Effects of Medication

Finally, the Court rejects plaintiff's contention that the ALJ erred by failing to consider the side effects from plaintiff's medication. (Plaintiff's Motion at 7-8). A claimant bears the burden of demonstrating that his use of medications caused a disabling impairment. See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet burden of proving medication impaired his ability to work because he produced no clinical evidence). The only evidence plaintiff points to in support of his contention are cursory references in disability report forms that

he experiences nausea and blurred vision from his medications. (Plaintiff's Motion at 6) (citing AR 104, 112). Plaintiff offers no objective evidence that his medication affected him in the way he claims, let alone that it interfered with his ability to work. See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) ("There were passing mentions of the side effects of [plaintiff's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [his] ability to work."). The ALJ did not err.[6]

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 11, 2010

                                         /s/
                                    Honorable Jacqueline Chooljian
                                    UNITED STATES MAGISTRATE JUDGE

---

[6] Plaintiff appears to suggest that the ALJ erred by failing to consider all possible side effects related to plaintiff's medication. (Plaintiff's Motion at 7-8). Plaintiff's argument has no merit. The ALJ was not required to address undocumented medication side effects. See Miller, 770 F.2d at 849 (ALJ properly rejected allegations of impairment from medication side effects where plaintiff produced no clinical evidence that narcotics use impaired his ability to work); Osenbrock, 240 F.3d at 1164.